WILLIAM PATE (SB # 45734)
William.pate@nlrb.gov
STEPHANIE CAHN (SB # 189277)
Stephanie.cahn@nlrb.gov
MOLLY KAGEL (SB # 304328)
Molly.Kagel@nlrb.gov
National Labor Relations Board, Region 21
312 North Spring Street, 10th Floor
Los Angeles, CA 90012
Telephone: (213) 894-6512
Facsimile: (213) 894-2778

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM B. COWEN, Regional Director of Region 21 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>v.<br><br>MASON-DIXON INTERNATIONAL D/B/A UNIVERSAL INTERMODAL SERVICES, SOUTHERN COUNTIES EXPRESS, INC., ROADRUNNER INTERMODAL SERVICES, LLC., AND UNIVERSAL TRUCKLOAD, INC.,<br><br>Respondents. | Case No.: 2:21-cv-05683<br><br>PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED [29 U.S.C. § 160(j)]<br><br>Date:<br>Time:<br>Courtroom: |

    To the Honorable Judges of the United States District Court for the Central District of California:

     William B. Cowen, Regional Director of Region 21 (Petitioner) of the National Labor Relations Board (Board), hereby petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended, (61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(j)) (the Act), for a temporary injunction (pursuant to Rule 65(b) of the Federal Rules of Civil Procedure,) pending final disposition of the matters herein by the Board.

     The matters started being litigated at a hearing before Board Administrative Law Judge Michael A. Rosas on June 14, 2021 through June 22, 2021 pursuant to a complaint alleging that Mason-Dixon Intermodal. d/b/a Universal Intermodal Services, Southern Counties Express, Inc., Roadrunner Intermodal Services, LLC, and Universal Truckload, Inc.(Respondents) have engaged in and are engaging in, acts and conduct in violation of Section 8(a)(1), (3) and (5) of the Act (29 U.S.C. § 158(a)(1), (3), and (5)).  During those dates, Petitioner presented it evidence, putting on numerous witnesses, but did not finish its case in chief. The hearing is scheduled to resume on July 26, 2021 and continue until all testimony and evidence has been presented by all parties.

     In support of this, Petitioner respectfully shows as follows:

  1. Petitioner is the Regional Director of Region 21 of the Board, an agency of the United States. This petition is filed for and on behalf of the Board.

  2. The Court's jurisdiction is invoked pursuant to Section 10(j) of the Act (29 U.S.C. § 160(j)), which provides that the Board shall have power, upon issuance of a complaint charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief.

  3. On or about the dates set forth below in paragraphs 4-9, the International Brotherhood of Teamsters (the Union) filed charges and amended charges with the Board alleging that Respondents have engaged in and are engaging in unfair labor practices in violation of the Act as follows:

4. On November 26, 2019, the Union pursuant to the provisions of the Act, filed a charge in Case 21-CA-252500. The Union filed a first amended charge on November 27, 2019. The Union filed a second amended charge on December 16, 2019. The Union filed a third amended charge on December 30, 2019. The Union's charges allege that Respondent Mason-Dixon International d/b/a Universal Intermodal Services (Respondent Universal Intermodal) violated Section 8(a)(1) and (3) of the Act by, inter alia: (1) unlawfully disciplining and terminating its employee Jonathan Ledesma and (2) unlawfully interrogating an employee regarding his support for the Union and/or his protected concerted activity. True and accurate copies of the original and amended charges in Case 21-CA-252500 are attached hereto as Exhibit 3(a), pp. 2339-74, and are made a part hereof.

5. On November 27, 2019, the Union pursuant to the provisions of the Act, filed a charge in Case 21-CA-252574. The Union filed a first amended charge on December 16, 2019. The Union filed a second amended charge on March 16, 2021. The Union's charge alleged that that Respondent Universal Intermodal violated Section 8(a)(1) and (3) of the Act by, inter alia: (1) unlawfully terminating its employee Romel Mallard and (2) unlawfully soliciting grievances and promising improvements to its employees. True and accurate copies of the original and amended charges in Case 21-CA-252574 are attached hereto as Exhibit 3(a), pp. 2310-38, and are made a part hereof.

6. On December 20, 2019, the Union pursuant to the provisions of the Act, filed a charge in Case 21-CA-253662. The Union filed a first amended charge on January 15, 2020. The Union filed a second amended charge on June 1, 2020. The Union's charge alleged that that Respondent Universal Intermodal and Respondent Southern Counties Express, Inc. (Respondent Southern Counties) violated Section 8(a)(1), (3), and (5) of the Act by, inter alia: (1) unlawfully reducing the hours of bargaining-unit employees without notification or bargaining with the Union, (2) announcing and, in fact, closing the facility where the bargaining employees were assigned to without notification or bargaining with the Union, and (3) unlawfully relocating and subcontracting the work of

1  the bargaining unit employees without notification or bargaining with the Union. True
2  and accurate copies of the original and amended charges in Case 21-CA-253662 are
3  attached hereto as Exhibit 3(a), pp. 2271-97, and are made a part hereof.
4       7.  On January 16, 2020, the Union pursuant to the provisions of the Act, filed a
5  charge in Case 21-CA-254813. The Union's charge alleged that Respondent Roadrunner
6  Intermodal Services, LLC. (Respondent Roadrunner) violated Section 8(a)(1) and (3) of
7  the Act by unlawfully laying-off its employees. A true and accurate copy of the original
8  charge in Case 21-CA-254813 is attached hereto as Exhibit 3(a), pp. 2243-49, and is
9  made a part hereof.
10      8.  On January 24, 2020, the Union pursuant to the provisions of the Act, filed a
11  charge in Case 21-CA-255151. The Union's charge alleged that Respondent Universal
12  Truckload, Inc. (Respondent Universal Truckload) violated Section 8(a)(1) and (3) of the
13  Act by unlawfully laying-off its employees. A true and accurate copy of the original
14  charge in Case 21-CA-255151 is attached hereto as Exhibit 3(a), pp. 2233-41, and is
15  made a part hereof.
16      9.  On April 14, 2020, the Union pursuant to the provisions of the Act, filed a
17  charge in Case 21-CA-259130. The Union filed a first amended charge on June 1, 2020.
18  The Union's charge alleged that that Respondent Universal Intermodal and Respondent
19  Southern Counties violated Section 8(a)(1) and (5) of the Act by, inter alia: (1) failing
20  and refusing to provide information and/or unreasonably delayed in providing
21  information relevant to the Union's bargaining with the Employer and (2) failing and
22  refusing to bargain in good-faith with the Union for a collective-bargaining agreement.
23  True and accurate copies of the original and amended charges in Case 21-CA-259130 are
24  attached hereto as Exhibit 3(a), pp. 2251-69, and are made a part hereof.
25      10. On March 17, 2021, following field investigations of the above cases,
26  during which all parties had an opportunity to submit evidence and legal analysis, the
27  Acting General Counsel of the Board, on behalf of the Board, by the Petitioner herein,
28  issued a Consolidated Complaint and Notice of Hearing (Complaint) pursuant to Section

1  10(b) of the Act, 29 U.S.C. Sec. 160(b). A true and accurate copy of the Complaint is
2  attached hereto as Exhibit 3(a), pp. 2202-32, and is made a part hereof.
3      11. On March 31, 2021, Respondents filed their Answers to the Complaint.
4  True and accurate copies of Respondents' Answers to the Complaint are attached hereto
5  as Exhibit 3(a), pp. 2174-2201, and are made a part hereof.
6      12. This matter began being litigated at a hearing before Administrative Law Judge
7  Michael Rosas on June 14, 2021 through June 22, 2021. A copy of the transcript of the
8  hearing is attached hereto as Exhibit 1(a) – (f), pp. 19-1004. A copy of the exhibit
9  documents from the hearing, labeled JX for Joint Exhibit, GC for General Counsel, R for
10 Respondents, are attached hereto as Exhibit 2-4, pp. 1005-2758.
11     13. The parties are scheduled to resume the hearing before Administrative Law Judge
12 Michael A. Rosas on July 26, 2021. Thereafter the parties will submit post-hearing briefs
13 to the Administrative Law Judge no sooner than 35 days after the conclusion of the trial.
14 The Administrative Law Judge's decision and recommended order will issue as soon as
15 possible after that date. Once the decision and recommended order issues, any party may
16 file exceptions to the decision to the Board.
17     14. Respondents have refused to settle or remedy the allegations of the
18 Complaint.
19     15. Petitioner asserts that there is a strong likelihood that the Board will find that
20 Respondents have engaged in, and are engaging in, unfair labor practices within the
21 meaning of Section 8(a)(1), (3), and (5) of the Act (29 U.S.C. § 158(a)(1),(3) and (5)),
22 and that said unfair labor practices affect commerce within the meaning of Section 2(6)
23 and (7) of the Act (29 U.S.C. § 152(6) and (7)).
24     16. More particularly, as shown by the transcript of the administrative
25 hearing, exhibits, affidavits and other materials, Petitioner asserts that there is a strong
26 likelihood that the General Counsel will establish, and that the Board will find, in the
27 underlying administrative proceedings that:
28          a.    i.   At all material times, Respondent Universal Intermodal, a Michigan

corporation, with a former office located at 2035 Bella Vista Way, Compton, California (Compton facility), has been engaged in the business of providing transportation services.

ii. During the calendar year 2019, a representative period, Respondent Universal Intermodal purchased and received at its Compton, California facility goods valued in excess of $50,000 directly from points outside the State of California.

iii. At all material times, Respondent Southern Counties, a California corporation, with a principal office located at 18020 South Santa Fe Avenue, Rancho Dominguez, California (Rancho Dominguez facility) has been engaged in the business of providing full-service harbor drayage, transloading, warehousing and project cargo services in Southern California.

iv. During the calendar year 2019, a representative period, Respondent Southern Counties purchased and received at its Rancho Dominguez, California facility goods valued in excess of $50,000 directly from points outside the State of California.

v. At all material times, Respondent Universal Truckload, a Delaware corporation, with an office and place of business located at 15033 Slover Avenue, Fontana, California (Slover facility) has been engaged in the business of customized transportation and logistics solutions.

vi. During that calendar year 2019, a representative period, Respondent Universal Truckload purchased and received at its Slover facility goods valued in excess of $50,000 directly from points outside the State of California.

vii. At all material times, Respondent Roadrunner, a limited liability company with offices and places of business located at 1815 East O Street, Wilmington, California (Wilmington facility) and 11272 Calabash Avenue, Fontana, California (Fontana facility) has been engaged in the business of a nationwide drayage provider, servicing major port and rail locations throughout the United States.

viii. During the calendar year 2020, a representative period, Respondent Roadrunner performed services valued in excess of $50,000 in States other than the State of California.

ix. At all material times until about December 19, 2019, Respondent Universal Intermodal utilized the Slover facility for certain of its drivers.

b. i. At all material times, Respondents have been affiliated business enterprises under control of Universal Logistics Holdings, Inc. through Universal Management Services with common officers, ownership, directors, management, and supervision; have administered a common labor policy; have shared common premises and facilities; have provided services for and made sales to each other; have interchanged personal with each other; have interrelated operations services and have held themselves out to the public as a single integrated enterprise.

ii. Based on its operations described above, Respondents constitute a single-integrated business enterprise and a single employer within the meaning of the Act.

c. i. At all material times, Respondents have had substantially identical management, business purposes, operations, equipment, customers, and supervision, and ownership.

ii. Based on the operations and conduct described above, Respondents are, and have been at all material times, alter egos within the meaning of the Act.

d. At all material times, Respondents have been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act (29 U.S.C. § 152(2), (6), and (7)).

e. At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act (29 U.S.C. § 152(5)).

f. At the relevant material times:

i. Joe Lugo was an agent and supervisor of Respondent Universal Intermodal Services within the meaning of Sections 2(11) and 2(13) (29 U.S.C. § 152(11) & (13)) of the Act from the time period November 18, 2019 through December 20, 2019.

    ii. Michael Vagts was an agent and supervisor of Respondent Universal Intermodal Services, Inc. within the meaning of Sections 2(11) and 2(13) (29 U.S.C. §§ 152(11) & (13)) of the Act from the period January 1, 2019 through July 30, 2020.

    iii. Dennis Glackin was an agent and supervisor of Respondent Logistics Insight Corp., within the meaning of Sections 2(11) and 2(13) of the Act from the period January 1, 2019 through December 20, 2020, and was an agent and supervisor of Universal Management Services, Inc. within the meaning of Sections 2(11) and 2(13) (29 U.S.C. §§ 152(11) & (13)) of the Act from the period December 21, 2020 through June 16, 2021.

    iv. Tony Milles was an agent and supervisor of Respondent Universal Intermodal Services, Inc., within the meaning of Sections 2(11) and 2(13) (29 U.S.C. §§ 152(11) & (13)) of the Act from the period January 1, 2019 through July 30, 2020.

    v. Tim Phillips was an agent and supervisor of Respondent Universal Management Services, Inc., within the meaning of Sections 2(11) and 2(13) (29 U.S.C. §§ 152(11) & (13)) of the Act from the period January 1, 2019 through July 30, 2020.

    vi. Don Taylor was an agent and supervisor of Respondent Universal Intermodal Services, Inc., within the meaning of Sections 2(11) and 2(13) (29 U.S.C. §§ 152(11) & (13)) of the Act from the period January 1, 2019 through July 30, 2020.

    vii. Mike Erskine was an agent and supervisor of Respondent Universal Truckload, Inc., within the meaning of Sections 2(11) and 2(13) of the Act from the period January 1, 2019 through December 13, 2019, and was an agent and supervisor of Universal Capacity Solutions, Inc. within the meaning of Sections 2(11) and 2(13) (29 U.S.C. §§ 152(11) & (13)) of the Act from the period December 16, 2019 through July 30, 2020.

    viii. Chris Howder was an agent and supervisor of Respondent Universal Truckload, Inc., within the meaning of Sections 2(11) and 2(13) of the Act from the period January 1, 2019 through December 13, 2019 and was an agent and supervisor of Universal Capacity Solutions, Inc., within the meaning of Sections 2(11) and 2(13) (29

U.S.C. §§ 152(11) & (13)) of the Act from the period December 16, 2019 through March 27, 2020.

    ix. Kirk Cummings was an agent of Universal Intermodal Services, Inc. within the meaning of Section 2(13) (29 U.S.C. § 152(13)) of the Act for the purposes of labor relations from the period November 11, 2019 until December 13, 2019.

    g.   i. The following employees of Respondent Universal Intermodal (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act (29 U.S.C. § 159(b)):

> All full-time and regular part-time port drivers employed by Respondent Universal Intermodal working or dispatched out of Respondent Universal Intermodal's facility located at 2035 Vista Bella Way, Compton, California; excluding all other employees, dispatchers, mechanics, office clerical employees, professional employees, confidential employees, managerial employees, guards, and supervisors as defined in the Act.

    ii. On December 4, 2019, an election was conducted in the Unit.

    iii. On January 8, 2020, the Board certified the Union as the exclusive collective-bargaining representative of the Unit.

    iv. At all times since December 4, 2019, based on Section 9(a) of the Act (29 U.S.C. §159(a)), the Union has been the exclusive collective-bargaining representative of the Unit.

    h.   i. About November 12, 2019, Respondents, by Kirk Cummins, at the Slover facility, interrogated an employee about the employee's support for the Union.

    ii. About November 14 or 18, 2019, at the Compton facility, Respondents, by Joe Lugo, solicited employee complaints and grievances, promised its employees increased benefits an improved terms and conditions of employment if they refrained from union organizational activity.

     iii. About November 25, 2019, at the Compton facility, Respondents, by Joe Lugo, solicited employee complaints and grievances, promised its employees increased benefits an improved terms and conditions of employment if they refrained from union organizational activity.

     iv. About November 25, 2019, Respondents discharged Respondent Universal Intermodal employee Romel Mallard.

     v. About November 25, 2019, Respondents suspended Respondent Universal Intermodal employee Jonathan Ledesma.

     vi. About November 27, 2019, Respondents discharged Respondent Universal Intermodal employee Jonathan Ledesma.

     vii. Respondents engaged in the conduct described above in paragraphs 16(h)(iv) through (vi) because the named employees of Respondent Universal Intermodal assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

  i. i. About December 5, 2019, Respondents reduced the work assigned to the Unit employees. (paragraph 16(i)(i))

    ii. Respondents engaged in the conduct described above in paragraph 16(i)(i) because the Unit employees assisted the Union and engaged in concerted activities, and a majority voted in favor of he Union in an election conducted on December 4, 2019, and to discourage employees from engaging in these activities.

    iii. The subject set forth above in paragraph 16(i)(i) relates to wages, hours, and other terms and conditions of employment for the Unit and is a mandatory subject for the purposes of collective bargaining.

    iv. Respondents engaged in the conduct described above in paragraph 16(i)(i) without prior notice to the Union and without affording the Union an opportunity to bargain with Respondent with respect to this conduct or the effects of this conduct.

  j. i. About December 18, 2019, Respondents laid off Respondent Roadrunner's employees. (paragraph 16(j)(i))

        ii.   Respondents engaged in the conduct described above in paragraph 16(j)(i) because the Unit employees assisted the Union and engaged in concerted activities, and employees of Respondent Roadrunner supported and assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

    k.   i.   About December 20, 2019, Respondents laid off Respondent Universal Truckload's employees. (paragraph 16(k)(i))

        ii.   Respondents engaged in the conduct described above in paragraph 16(k)(i) because the Unit employees assisted the Union and engaged in concerted activities, and employees of Respondent Universal Truckload supported and assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

    l.   i.   About December 20, 2019, Respondents closed Respondent Universal Intermodal's Compton facility and laid off the Unit employees.

        ii.   About December 20, 2019, Respondents moved the work formerly assigned to the Unit employees to owner operations working under the direction of Respondent Southern Counties.

        iii.   Respondents engaged in the conduct described above in paragraphs 16(l)(i) and (ii) because the Unit employees assisted the Union and engaged in concerted activities, and a majority voted in favor of the Union in an election conducted on December 4, 2019, and to discourage employees from engaging in these activities.

        iv.   Respondents engaged in the conduct described above in paragraphs 16(l)(i) and (ii) to discourage employees at Respondents' other facilities from supporting or assisting the Union or engaging in concerted activities.

        v.   The subjects set forth above in paragraphs 16(l)(i) and (ii) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

    vi. Respondents engaged in the conduct described above paragraphs 16(l)(i) and (ii) without prior notice to the Union and without affording the Union an opportunity to bargain with Respondent with respect to this conduct or the effects of this conduct.

  m. i. About January 18, 2020, the Union requested that Respondent Universal Intermodal bargain collectively about the terms and conditions of employment for the Unit employees.

    ii. Since about January 31, 2020, Respondent Universal Intermodal has failed and refused to bargain collectively about the subjects set forth above.

    iii. The subjects set forth above relate to the wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

  n. i. Since about January 18, 2020, the Union has requested in writing that Respondent Universal Intermodal and Respondent Southern Counties furnish the Union with the information contained in the letter attached as Exhibit 3(a), pp. 2226-32. (paragraph 16(n)(i))

    ii. The information requested by the Union, as described above in paragraph 16(n)(i) is necessary for, and relevant to, the Union's performance of its duties as the exclusive collective-bargaining representative of the Unit.

    iii. Since about January 31, 2020[1], Respondent Universal Intermodal and Respondent Southern Counties have failed and refused to furnish the Union with the information requested by it as described above in paragraph 16(n)(i).

  o. By the conduct described above in paragraphs 16(h)(i) through (iii), Respondents have been interfering with, restraining, and coercing employees in the

---

[1] The July 15, 2020 date identified in allegation 18(c) in the complaint was a typographical error and the Petitioner plans to amend the Complaint at the conclusion of the administrative hearing to address this error.

exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1)).

    p.  By the conduct described above in paragraphs 16h(iv) through (vii), (l)(i) through (ii), (j), (k), and (l)(i) through (iv), Respondents have been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act (29 U.S.C. §158(a)(1) and (3)).

    q.  By the conduct described above in paragraphs 16(i)(iii) through (iv), (l)(i) through (ii), (l)(v) through (vi), (m), and (n), Respondents have been failing and refusing to bargain collectively with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act (29 U.S.C. §158(a)(1) and (5)).

    r.  The unfair labor practices of Respondents described above affect commerce within the meaning of Section 2(6) and (7) of the Act (29 U.S.C. § 152(6) and (7)).

17. The acts and conduct of Respondent described above in paragraphs 16(h) through (r) have taken place within this judicial district.

18. Unless a temporary injunction is obtained, it can be anticipated that support for the Union among Respondents' employees in the Unit and at Roadrunner and Universal Truckload will be destroyed by the effects of the unfair labor practices detailed above; the unlawfully discharged and laid off employees will find new jobs elsewhere; the Union's ability to represent and bargain collectively on behalf of the Unit will be permanently impacted; and Respondents' remaining employees will not be free to exercise their right to engage in union or protected concerted activities for the entire period required for Board adjudication due to fear of retaliation from Respondents, which are harms that cannot be remedied in due course by the Board.

19. The Court's grant of a Section 10(j) injunction will reassure the employees of their rights under the Act; maintain and restore the Union's level of support that it had prior to Respondents' unlawful conduct; preserve the efficacy of the Board's final order;

and prevent the scattering of the unlawfully discharged and laid off employees and further undermining of employee rights under the Act and damage to the Board's remedial powers. It is likely that substantial and irreparable harm will result to Respondents' employees and their statutorily protected right to organize, unless the aforesaid unfair labor practices are immediately enjoined, and appropriate relief is granted.

20. There is no adequate remedy at law for the irreparable harm being caused by Respondents' unfair labor practices described above. The equities in this matter, including the harm to the employees involved herein, the harm to the public interest, and the harm to the purposes and policies of the Act if the requested injunction is not granted, clearly outweigh any harm that the grant of a temporary injunction may have on Respondents. Granting the temporary injunction sought by Petitioner will cause no undue hardship to Respondents.

21. Upon information and belief, it may be fairly anticipated that, unless Respondents' unfair labor practices are immediately enjoyed and restrained, Respondent will continue to engage in the acts and conduct alleged above. To avoid the serious results referred to above, it is essential, just, proper, and appropriate, for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable, and immediate injury to such policies, to the public interest, and Respondents' employees, and in accordance with the purposes of Section 10(j) of the Act, that, pending final disposition of the matters at issue before the Board, Respondents be enjoined and restrained as prayed herein.

WHEREFORE, Petitioner prays:

That the Court issue an order requiring Respondents Universal Intermodal, Southern Counties, Roadrunner, Universal Truckload, their officers, agents, successors, assigns, and all persons acting in concert or participation with them:

Cease and desist from:

(a) Interfering with, restraining, or coercing employees in the exercise of rights guaranteed by Section 7 of the National Labor Relations Act;

(b) Terminating, suspending, reducing unit employees' hours or work, or transferring work in retaliation for their union activity;

*(c)* Closing facilities in retaliation for employees' union activity;

(d) Interrogating employees about their union sentiments or activity;

(e) Soliciting complaints from employees and promising benefits and improved terms and conditions of employment if they refrain from union organizational activity;

(f) Refusing to provide the Union with information requested and necessary for bargaining;

(g) Refusing to negotiate with the Union over a collective bargaining agreement or any other terms and conditions of employment;

(h) In any like or related matter interfering with employees' rights under Section 7 of the Act.

Take the following affirmative action:

(a) Within five (5) days of the issuance of the District Court Order, restore the Unit, by offering Unit employees who were laid off as a result of Mason-Dixon Intermodal d/b/a Universal Intermodal Services' closing the Compton facility and offer, in writing, interim reinstatement to the Unit employees to their former positions or if those positions no longer exists, to a substantially equivalent position at a location in or near Compton, California without prejudice to seniority or any other rights and privileges previously enjoyed, displacing, if necessary, any employee who may have been hired or reassigned to replace them. To the extent it may be impossible to offer reinstatement within five (5) days to all employees due to reduced work levels, discriminatees not immediately offered reinstatement shall be offered reinstatement to their former positions from a preferential hiring list as those positions become available.

(b) Within five days of the issuance of the Order, offer employees Romel Mallard and Johnathan Ledesma interim reinstatement to their former jobs with Mason-

      Dixon Intermodal d/b/a Universal Intermodal Services or, if those jobs no longer exist, to substantially equivalent positions at a location in or near Compton, CA, without prejudice to their seniority or any other rights or privileges previously enjoyed;

(c) Rescind the unlawful suspension issued to Jonathan Ledesma and it will be not used against him in assessing any future discipline.

(d) Within five days of issuance of the Order, restore the lawful status quo with regard to the level of employee driver work at Universal Intermodal.

(e) Within five days of the issuance of the Order, offer all employees who were laid-off from Roadrunner Intermodal Services, LLC and Universal Truckload, Inc. in December 2019 interim reinstatement to their former jobs or, if those jobs no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights or privileges previously enjoyed; displacing, if necessary, any employees who may have been hired or reassigned to replace them. To the extent it may be impossible to offer reinstatement within five (5) days to all employees due to reduced work levels, discriminatees not immediately offered reinstatement shall be offered reinstatement to their former positions from a preferential hiring list as those positions become available.

(f) Within five days of the issuance of the Order, immediately recognize the Union as the bargaining representative of the Universal Intermodal unit and bargain in good faith with the Union as the exclusive collective-bargaining representative of the employees described in the Unit above concerning wages, hours and working conditions. If an agreement is reached with the Union, sign a document containing that agreement.

(g) Within five days of the issuance of the Order, Mason-Dixon Intermodal d/b/a Universal Intermodal Services must furnish the Union with the information set forth in request numbers 1(b)-(d), 1(i), 1(n)-(q), 6(a)-(b), 7-10, 11(a)-(k), and 11(m)-(p) of its January 18, 2020 letter.

(h) Hold one or more mandatory employee meetings, on working time and at times when Roadrunner Intermodal Services, LLC, Universal Truckload, Inc., and the company where the Unit employees are returned to work, customarily hold employee meetings, and schedule to ensure the widest possible employee attendance, albeit with proper social distancing measures due to the COVID-19 pandemic, at which the Order will be read to employees by a responsible official of each company in the presence of a Board agent or, at the each company's option, by a Board agent in the presence of a responsible official of that company; (ii) announce the meeting(s) for the order reading in the same manner it would customarily announce a meeting of employees; and (iii) require that all employees attend the meeting(s).

(i) If the facilities involved in these proceedings are open, the Order must be read within 10 (ten) days after the Order issues. If the facilities involved in these proceedings are closed or not staffed by a substantial complement of employees due to the COVID-19 pandemic, the Order must be read within 14 days after the facilities reopen and half of the bargaining unit employees have returned to work; but regardless of staffing level, the Order must be read no later than 90 days after the issuance of the District Court's Order;

(j) Within five (5) days of issuance of the Order, post copies of the District Court's Order at the Employer's Universal Truckload and Roadrunner Southern California facilities where notices to employees are customarily posted and maintain such postings free from all obstructions and defacements during the pendency of the Board's administrative proceedings, and mail copies of the same to all unit employees at Mason-Dixon Intermodal d/b/a Universal Intermodal Services employed on December 15, 2019; to Romel Mallard and Johnathan Ledesma; and all employees laid off from Roadrunner Intermodal and Universal Truckload in December 2019.

(k) Within twenty (20) days of issuance of the District Court's Order, file with the Court, with a copy to the Regional Director of Region 21, a sworn affidavit from a responsible official setting forth with specificity the manner in which the Employers have complied with the terms of this decree, including how and when it posted the documents required by this Order.

Dated at Los Angeles, California, this 16th of July, 2021.

By:

/s/ Molly Kagel
Molly Kagel
Counsel for Petitioner
National Labor Relations Board, Region 21
312 North Spring Street, 10th Floor
Los Angeles, CA 90012
Telephone: 213-634-6511
Fax: (213) 854-2778
Email: molly.kagel@nlrb.gov